The next two cases are ADAMS AND ASSOCIATES versus the United States. They are quite similar, dealing with just different properties. We've let them stand as independent cases, and I don't know whether when you get to the second case you will have much to say, and we would ask you not to simply be repetitious. So why don't we hear the first case, 5077, which deals with the Schreiber location. Mr. Schreier? Schreier, Your Honor. Schreier? Schreier. Schreier, sorry. Schreier relating to Schreiber. May it please the Court, my name is Michael Schreier. I represent the appellant, Adams & Associates. This is a pre-war bid protest case involving Department of Labor's procurement of an operator for the Schreiber Job Corps Center. The Court of Appellants made at least three errors of law. Mr. Schreier, let me go to a key concern I have while you're processing this. On page 36 of the brief, Adams raised the FAR as a, I'm sort of paraphrasing, a contracting offer. It shall set aside an individual acquisition when and only when, one, it is determined to be in the interest of assuring a fair proportion of government contracts in each industry category, is placed with small business concerns, and, two, the circumstances described in 19.502-2, i.e., the role to exist. The actual wording of the FAR uses an or. It says the contracting officer shall set aside an individual acquisition or class of acquisitions for competition among small businesses when it is determined to be in the interest of maintaining or mobilizing the nation's full productive capacity, and so on, or assuring that a fair proportion exists. Can you tell me how you identify support for transposing the introductory language of subsection A-1 onto subsection A-2 and rewording the FAR as you've done? Your Honor, I don't believe it is a rewording of the FAR. 19.502-1A does talk about when it should be set aside an interest assuring a fair proportion and the circumstances described in 19.502-2 are met. And it's that and, which is of critical importance here under the FAR, that in the Shriver case, the court below acknowledged there was an and, a conjunctive between the fair proportion determination requirement and the Rule 2 requirement, yet the court purposely disregarded it, calling it implicit as drafting. Now, according to this Court's standard in Tesoro, one must read regulations according to the plain language. And by purposely omitting the word and and changing it to something else in the regulation, that is an error of law. And right there, that should be sufficient to set aside the fair proportion determination aspect of this case. Now, I would like to start the Court talking about the Workforce Investment Act, which I call WEA for short. Now, the starting place for any sort of statutory construction is the plain language of the statute and the structure of the statute. Here in WEA, it's a very unique statute, and there are defined terms of eligible entities, competitive basis, and the overall structure of the statute leads to the conclusion that small business set-asides are not intended for Job Corps Center procurements. First, look at the defined term eligible entities. Now, again, Congress chose its words carefully here, eligible entities. And according to Black's Law Dictionary, eligible means fit and proper to be chosen. And so this is a clear intent by Congress that it wanted the list of all the universe of eligible entities to be considered for when there was a Job Corps Center procurement. And most importantly, in the description of eligible entities, Congress did not articulate any standard for the Department of Labor to use to make any eligible entity ineligible before selecting an eligible entity on a competitive basis. In your briefs, again, both briefs, Adams asserts that, I'm quoting, Congress stated that a contract should only be set aside to assure a fair proportion of contracts that go to small business concerns. And still quoting, Congress's use of the term fair instructs agencies to be rational and reasonable with small business set-asides. That proposition in both briefs lacks citation. Where in the regulations or the Small Business Act or the legislative history is there support for the proposition that the use of fair prescribes a rational and reasonable test? Your Honor, looking at the plain language of 644A. Wait, wait, wait, wait, wait. You heard my question, right? Please rephrase that. I apologize, Your Honor. Where in the regulations or the Small Business Act or the legislative history is there support for that proposition? The proposition being, again, Your Honor. Congress stated, this is a quote from both your briefs, that a contract should only be set aside to assure a fair proportion of contracts go to small business concerns. Okay. And then you said, use of fair instructs them to be rational and reasonable. Okay. Your Honor, looking at, talking about the legislative history, which is one of the things you mentioned, Your Honor. I mentioned the languages. Correct. That from the legislative history of the Small Business Act, the House report, report number 99-718 at page 259, Congress made clear that the clear intent of this legislation is to guarantee that a predominant portion of contract dollars is awarded under circumstances in which all businesses, large, medium, small, are allowed to compete. So the presumption here is that once one... Is that your basis for the rational and reasonable test? That there has to be a, in any government decision, there has to be a rational basis. There has to be some facts to support it. And in this situation, the court in Shriver found that there was no fair proportion determination made prior to setting aside this procurement. Yeah, but where does the statute or the regulation say that there has to be such a determination made on an individualized basis? The regulation does say that it must be on an individualized basis. And if I draw the court's attention to 19.502-1A, in the very start of it, it says the contracting officer shall set aside an individual acquisition or class of acquisitions for competition. So right there in the opening... But it doesn't say that he has to make such a determination, a formal determination. It just tells him what to do. Well, but it says that a determination must be made. And here, there was no determination made. The record in the court below is clear that there was no fair proportion determination made by anyone. So my next question is, fair proportion, where is the concern that there not be too much set aside for small business? The concern seems to be to make sure that it's enough set aside for small business. Where's the concern that there not be too much set aside? Well, again, that comes from the congressional record, Your Honor, and from the legislative history of the statute, talking about how that points to ensure that at least there is a floor and perhaps a ceiling for small business set asides. The idea is to encourage small business... Where's the perhaps a ceiling? Looking at the language of the Small Business Act and the application thus far, it makes it very clear that if we look at 19.502-6, it talks about a number of factors which must be considered about whether or not to set aside procurement. Among the things that are to be considered is whether or not small business concerns are already receiving a fair proportion of the agency's contracts for services and supplies. And that's at the subsection F of that regulation. So the FAR itself put in limits as to what a fair proportion should be. The presumption is that everything should be full and open unless, of course, it's in the interest of furthering small business. It's a standard to determine whether or not a fair proportion has been met. Could I move you to another subject? Please, Your Honor. Are you challenging the RFI? Is there anything wrong with the RFI? Yes, Your Honor. There is something wrong with the RFI. And that gets to the third error about how the court below did not properly apply the Rule 2 itself. Now, I see it's my rebuttal time, Your Honor. Please answer the question. We'll give you back some time. Now, again, part of the Rule 2 is it's very clear in the language that offers are to be obtained from at least two responsible small business concerns. And the question is, what does responsible mean? Responsible in the FAR is expressive referring. No, no, no, no. But answer my question. Are you challenging the RFI? And what's wrong with it if you are challenging it? What's wrong with the RFI is that the Department of Labor did not look at the required factors for responsibility. And that was part of the problem. You mean in the RFI they didn't list the right factors? They didn't ask the right questions, Your Honor. And was that issue raised in the Court of Federal Claims? Yes, it was, Your Honor. And what about the fact that you didn't challenge the RFI at the time it was issued? Are you familiar with our decision in blue and gold? Yes, Your Honor. So why doesn't blue and gold require you to challenge the RFI at the time if you had an objection to it? Your Honor, we filed a... You challenged the small business set-aside. But I don't recall that you challenged the RFI as such at the time that the RFI was issued. Am I mistaken about that? I don't recall that, Your Honor. Permit me, I'll answer it when I come up for rebuttal. We will give you three minutes for rebuttal. Ms. McCarthy. Good morning, Mike. Please report, Your Honors. I was going to begin by addressing the Workforce Investment Act. While we're on this last question, did they challenge the RFI? And if they didn't, doesn't blue and gold suggest that they've got a problem? Well, that's an interesting question. We actually did challenge jurisdiction below, but for a different reason, which was rejected by the trial court. Because blue and gold pertain to a timely objection to the terms of the solicitation, we of course... Why wouldn't blue and gold apply to objecting to an RFI? It could by extension. At the time, our position was that the procurement of the court's jurisdiction was sort of tied to the solicitation, and this was pre-solicitation activity. And we adjusted our position in light of this court's decision in SATAC, which suggests that matters related to a procurement are broader. And so the request for information issued here is related to a procurement, certainly within the reasoning of SATAC, so that raises a good question. We did not raise that challenge below. Would they have the opportunity to challenge the RFI? Well, I was going to say, prior to this court's decision in SATAC, and in fact below here, the solicitations ultimately did issue... I'm asking whether they could challenge the RFI at the time it was issued. If it was listing the wrong factors, could they have challenged it when it was issued? Certainly before SATAC we would have said no, but if it's related to a procurement, arguably they could have come in and they could have challenged that. Again, we have not extended blue and gold. We did not present a blue and gold challenge. We presented a rightness challenge. We didn't think that the action was right for the solicitation that was not issued. In terms of their standing here, I think that these appeals, presenting them together, present rightness challenges or standing challenges, because Adams, as a large business contractor, for instance, the Small Business Act 644A was not enacted for the benefit of large business contractors. It's obviously enacted for the protection of small businesses, so to the extent that we had concerns, especially below that, Adams lacked standing to challenge a fair proportion determination under the Small Business Act. I want to be very, very clear, there is no ceiling to small business set-asides under the Small Business Act. This language is drafted, the plain language of 15 U.S.C. 644A is clearly drafted for the benefit of ensuring that the policies of fostering small business competition are satisfied, that there's a fair proportion of these small business contracts awarded across different industry categories. Well, Mr. Schreier gave you that when he said potentially. Mr. Schreier gave you that when he said potentially a ceiling. He practically conceded it. Right. So we don't see how Adams can come in and have this small business set-aside overturned on the basis of a fair proportion analysis. In terms of the Rule of Two analysis, unless the Court wants me to address the Workforce Investment Act. But what they're saying, as I understand it, is that the RFI doesn't have the right criteria for responsibility in it. And that therefore, in making the determination that there was a reasonable prospect of two qualified bidders, the contracting officer wasn't addressing the right criteria. That's what I understand the argument to be. That is one of the arguments that Adams has presented. To do a small business set-aside, the FAR requires the agency to do market research, and then there are criteria that the agency looked at for market research. There were 14 factors in each one of these requests for information. If they don't consider the right criteria, isn't that a problem? What is the right criteria? The right criteria is something that will allow a contracting officer to make a determination as to whether there's a reasonable expectation that the contract, a small business set-aside, would be awarded to a responsible contractor, that two or more offers would be presented, thereby ensuring competition, and that an award could be made at a fair market price. What kind of research... If in making that determination, let's say the contracting officer said, I'm not going to consider a fair market price. To me, it's not relevant. That would be a problem, right? That would be a problem. If he applies the wrong criteria, it's a problem. And what they're arguing is that he didn't apply the right criteria because the list of responsibility factors in the RFI isn't the right list. Well, we don't challenge his jurisdiction. Adams is the court's jurisdiction to entertain that challenge by Adams, but that's a merit list. There's nothing wrong with the criteria. There are 14 rigorous criteria, as Judge Williams noted in the Adams-Ganson case below. They concern past performance. They concern experience. They're perfectly reasonable criteria. I think Adams is taking issue with the fact that the Department of Labor modified the criteria from an earlier request for information. Yeah, but that's irrelevant. It's irrelevant. So in your view, the RFI does include the necessary criteria from the FAR? Absolutely. Absolutely, and they have not identified anything in the FAR. They do conflate, as Judge Williams noted, they do conflate the responsibility determination that would be applied in deciding whether there's an award. They do conflate that responsibility criteria with the request for information. Well, it has to be the same criteria, doesn't it? Well, they are, as Judge Williams noted in Ganson, they are roughly identical. But what is the harm, I mean, what is the real harm of, I guess what I'm trying to say, the stakes for, as Judge Burbank in Shriver was trying to say, the stakes for a small business set-aside are rather low. We're talking about reasonableness. We're trying to effectuate policy. But that's an argument that he has a lot of discretion if he's applying the right criteria and weighing them and making judgments as to whether these people are reasonably likely to be satisfied. That all makes sense. But if he's applying the wrong criteria, then there could be a problem. Well, there could be a problem in the extent that, as Judge Burbank was trying to say, this whole scheme, this whole scheme for small business set-asides, the stakes are rather low because even if the contracting officer is wrong and there really aren't two or more offers that are received from qualified businesses, that will be determined after the solicitation is issued and the offers are received before an award is made. And if there isn't a response... Mr. McCarthy, we haven't talked at all about the elephant in the room, and that's a prior case, race care, which is on appeal in this court and you're familiar with it. And for all I know, I don't know. Maybe you even argued it. My colleague Amanda Tantum argued it. If the panel that heard that case affirms the judgment of the Court of Federal Claims, is there anything more to this case? Well, race care raises, as Ms. Tantum explained to Judge Chen at the oral argument last month, race care raised a slightly different variation of the Workforce Investment Act and then they raised a very narrow set-aside determination. Far be it from me to describe Adams' appeals for it, but Adams has raised other arguments regarding the Workforce Investment Act that race care didn't raise and it's also made a challenge regarding the spare proportion issue, which race care, as I recall, did not raise at all. And the rule of two issue is different, right? I'm sorry? The rule of two issue is different. And the rule of two issue is different. So if you do the Venn diagram, there would be, actually, it wouldn't be perfect. Race care is a real subset of the issues that are raised here. And there was a discussion about consolidating the actions and one of the reasons why we vigorously oppose consolidation is they really are different records, different arguments, and they're individual procurements. And one of our concerns here is that the joint appendices may be confused because there's a lot of extra record material that's contained in these joint appendices. Ironically, the Adams-Schreiber Joint Appendix has a lot of material from the cancelled solicitation for Adams-Gasden, and so there's a lot of extra record material here. When it comes to actually issuing the solicitation in these kinds of cases, do you, in the solicitation, does the government in the solicitation, track the responsibility criteria in the FAR? Yes. For the solicitation and for the award, I guess the point I was getting to earlier, Your Honor, is that if the small business set-aside was ill-advised or not... No, no, I understand. But you actually, it repeats the criteria from the FAR for responsibility in the solicitation. Right. Why do you use different criteria in the RFI? Because the RFI, well, again, they're very similar. In the RFI, the market research is designed to sort of see whether a small business set-aside would be appropriate for this type of industry and encourage a small business set-aside. And as Judge Burgink explained, if the small business set-aside turned out to be the county officer's prediction, reasonable expectation turned out not to come to pass, then it can revert back to a full and open competition procurement vehicle. There's really no harm to, there's no harm other than perhaps the waste of time. As I said, the stakes of the small business set-aside determination... It doesn't explain to me why you use different criteria in the RFI and the solicitation. Because the small business set-aside determination, the FAR doesn't even require that an affirmative determination be memorialized. It's just a reasonable expectation. The standard, again, is quite low. And so I hope an expectation is that a small business set-aside will generate a competition that will allow an award to be made at a fair market price. At that point, to ensure that the awardee is responsible, then the county officer goes to the responsibility analysis at that appropriate stage. There's no guarantee even that these particular respondents to the market research will be the actual offerers in these solicitations. There's no guarantee that. It's just a matter of putting a feeler out and seeing what the market may look like and whether this can be potentially put aside as a small business set-aside. If your honors have any other questions, I'd ask to inform both judges, or maybe I'm getting ahead of myself. All right. Thank you, Ms. McCarthy. Mr. Schreier, I'll give you three minutes, and then we'll talk about whether we want a separate argument on the other case. Okay, your honors. Let me address some of the points that were raised. First, to talk about the question of requirement for a fair proportion determination, 644A, plain language itself, which is determined that there's a fair proportion. So the language that Congress uses in 644A requires a determination.  Basically, at the time the RFI was issued, there was no way that Adams could have known what additional information the AHC would have examined to assess the required factors. Well, but if the RFI wasn't requesting the right information, you certainly knew that at the time and could have objected to it. Well, even more importantly, as the government has said along here, that it had to be... Isn't it true that you could have objected to it? In theory, I suppose that one could have objected to it. However, the government would have deemed it premature because we have no idea what other information the government was looking at to make its set-aside determination. But the interesting thing is that we talked about the little two criteria, your honor. Again, I point the court too far at 9.104-1, which lists the responsibility factors that must be considered. And again, the way this FAR clause is written, it's written and. There are seven different responsibility factors joined by the word and, meaning they must all be considered. Now, Judge Lurie, I think you talked about the elephant in the room. I want to talk about this different elephant for a second. I'm reminded sort of the parable of the six blind men and the elephant, where each blind man is trying to feel a different part of the elephant to figure out what it is. Well, here, the whole idea of the FAR listing the responsibility factors and the Rule of Two expressly stating that there must be a responsibility determination links the two together and requires the agency to look at the required responsibility factors in order to determine whether or not the procurement should be set aside. Now, what was critically left out in this particular Rule of Two analysis was the factor G under the responsibility factors, otherwise qualified and eligible to receive award under ethical laws and regulations. Let's get this right back to WEA, where WEA itself has very specific geographic requirements, ability to coordinate with actual state and local plans, training offered to reflect the local communities in which the center will be operating, familiar with the local communities and state in which the center is located, and past performance of actually operating a job for a center. None of these claims were looked at. None of these were done. Therefore, they got a skewed view of what the elephant really looks like and could not make up a reasonable determination. So based on this recording, Your Honor, we ask that the Court vacate and set aside the Court of Federal Claims judgment in this pre-protest case and enter judgment for Adams and Associates. So in sum, your argument is that the FAR is rather like a rope, the quote from the poem. Rope or the ear or whichever portion, yes. Thank you, Mr. Schreier. We'll take this case under advisement, but as we all know, there's another case, 13-50-80, relating to another location. I would not want to give you 15 minutes to restate everything you said, but if there are further comments you want to make that are at least relevant to the Gadsden location, please do. We'll set it for 15 minutes. There's no expectation that you will even come close without being unduly repetitive. Thank you, Your Honor. Again, may it please the Court, I want to talk about, you mentioned the res care argument, and isn't that it? No, that's not it. Res care is not the full story. Let me explain where the res care decision and the res care argument stop short. Basically, the res care argument, it looks solely at the term competitive basis. The Court below simply says... The same as the first issue you raised here. That's correct, Your Honor. We haven't talked about the first issue yet. With the Court's indulgence, I would like to explain and expound upon that. That for basic statutory construction, you look at the plain language of the statute at issue. The Court below didn't look at WEA to interpret competitive basis. The Court below looked to competition and contracting at SECA. Right there, that's inappropriate. If you look within WEA itself, the term competitive basis is used in several different locations throughout the statute, which could not possibly mean competitive procedures as the Court below found it to mean. Now, the other interesting part here is looking at the legislative history of WEA. WEA was a deliberate attempt to overhaul and throw out the prior statute. There was another statute that was passed in 1982 that dealt with Job Corps Centers. In your briefs, Adam says that the provision that says the Secretary may prescribe rules and regulations, there's 32 and 30 in your briefs, to carry out this chapter, only to the extent necessary to administer and ensure compliance. In your briefs, you say that this provision explicitly denies DOL any substantive and interpretive rule-making authority with respect to WEA. Can you identify any provision in the DOL regulations that is not necessary to administer and ensure compliance with WEA? Yes, Your Honor. In particular, looking at, I believe it's 20 CFR 670.310A and 670.320A, where it engrafts all of CICA and all the FAR into Job Corps Center procurements. Again, based on the structure of the statute, the definition of eligible entities, how that term is combined with competitive basis, that there should be no basis for allowing small business set-asides here. But by the regulation that Department of Labor promulgated, through the back door allows small business set-asides again, in derogation of what we believe to be the plain language of WEA. And so the delegation of authority here is a unique delegation of authority. I have not found it in any other statute other than WEA itself. It's a far cry from the prior delegation of authority, which was in the prior version of the law. So Congress clearly meant something very specific when it only gave Department of Labor authority to promulgate regulations necessary to administer and ensure compliance. Not interpret, not to fill in the blanks, simply to administer. And by incorporating all of the FAR with small business set-asides, in contrary to the plain language, which does not permit small business set-asides, that Department of Labor has interpreted WEA improperly in derogation of its delegation of authority here. Anything further, Mr. Schreier? Yes, Your Honor. Again, to go back to the point that Your Honor made earlier, that we could not have challenged the RFI. The agency has discretion to proceed with its rule of two analysis. You told me earlier that you could. Well, in theory one could, but in practicality one cannot, because the agency has discretion to proceed with its rule of two analysis in any manner that would result in them gathering the required information. Including asking respondents questions in the RFI. So, challenging the RFI itself would not have been sufficient because they could have gathered information from other sources. Any further argument? I'll give you three minutes for rebuttal. Thank you, Your Honor. Does the government have anything further to say? I'll be very brief. I don't have to answer any questions. I mean, as we've stated in both of our briefs, nothing in the Workforce Investment Act includes small business set-asides. The Workforce Investment Act Procurement Provision Section 2887 provides direction to the Secretary of Labor to coordinate with state and local governments, to have a bureau to coordinate with the governor of the state on the contents of the solicitation. That is the special language in WEA. Then it borrows, it refers directly to exceptions to competitive solicitations in the Competition and Contracting Act, and it uses the undefined term competitive basis. The fact that the very term competitive basis isn't defined makes an argument that the Department of Labor's regulations intending to implement this act are unnecessary when such a term as competitive basis isn't even defined. If I may, just to, I feel like I'm exceeding the boundaries of propriety. This is in response to Your Honor's question. That's an odd introduction to a comment. But in terms of market research, I would just direct this Court's attention to FAR Part 10001, specifically 10001B, which describes the policy of the market research for small business set-asides. And B provides explicitly, when conducting market research, agencies should not request potential sources to submit more than the minimum information necessary. And I think that if read in fairness, that the policy behind market research is to provide a sort of gross level of market research to consider in a very preliminary way whether a small business set-aside would be appropriate and to allow the agency to proceed under the FAR impact that FAR explicitly encourages it if it's appropriate. And then if a small business set-aside is not possible, then we can revert back to full and open competition. And if Your Honors have any other questions? How was that improper, Ms. McCarthy? Well, I felt like it was going back to the Shriver. We'll follow her. Okay. Thank you, Your Honor. Thank you, Ms. McCarthy. Mr. Shriver, you have a couple of minutes only to respond to Ms. McCarthy and what she just said. Thank you, Your Honor. Ms. McCarthy referred to special language in WEA. I want to point the Court's attention again to the terms eligible entities and competitive basis and discuss about why this is also special language in WEA. The prior version of the statute did not have a term that defined eligible entities. So Congress meant to be very specific when it added the language to define the universe of eligible entities here in this statute. It wasn't in the prior statute. Similarly, the term competitive basis, again, she talks about special language, but competitive basis here was actually borrowed from the prior statute, the 1982 statute. That statute used the term competitive basis. Congress carried that term forward. However, SECA was passed in 1984. So to be able – one should not look to SECA to define a term that existed prior to SECA's passage. Your Honor, I ask the Court to reverse the report below. Thank you, Mr. Shriver. Ms. McCarthy will take both cases under advisement.